IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DUNCAN LEE NOBLE,

     Plaintiff,

v.                                CIV 20-0332 KBM

ANDREW M. SAUL,
Commissioner of Social
Security,

     Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and/or

Remand (*Doc. 24*) filed on January 20, 2021. Pursuant to 28 U.S.C. § 636(c) and Fed.

R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and

entering final judgment. *See Docs. 9-11.* Having considered the record, submissions of

counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be

denied.

## I.    Procedural History

On May 11, 2016, Mr. Duncan Noble (Plaintiff) filed an application with the Social

Security Administration for a period of disability and disability insurance benefits (DIB)

under Title II of the Social Security Act (SSA) and protectively filed an application for

Supplemental Security Income (SSI) under Title XVI of the SSA. Administrative Record[1]

(AR) at 239-52. Plaintiff alleged a disability onset date of January 1, 1993. AR at 239,

---

[1] Document 19-1 contains the sealed Administrative Record. *See Doc. 19-1.* The Court cites the
Administrative Record's internal pagination, rather than the CM/ECF document number and page.

246. Disability Determination Services (DDS) determined that Plaintiff was not disabled both initially (AR at 93-122) and on reconsideration (AR at 123-60). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of his applications. AR at 179-80.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 46-83. ALJ Frederick E. Upshall, Jr. issued an unfavorable decision on May 14, 2019. AR at 22-45. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 234-36), which the Council denied on February 11, 2020 (AR at 1-7). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" Plaintiff retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process,[2] ALJ Upshall found that Plaintiff engaged in substantial gainful activity from January 2006 through December 2008, but "there has been a continuous 12-month period(s) during which [he] did not engage in substantial gainful activity." AR at 28 (citing 20 C.F.R. §§ 404.1520(b), 404.1571-1576, 416.920(b), 416.971-976). The ALJ's "findings address the period(s) [he] did not engage in substantial gainful activity." AR at 28.

---

[2] ALJ Upshall first found that Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2014." AR at 28.

At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: degenerative disc disease, lumbar spine; morbid obesity; depression; post-traumatic stress disorder [(PTSD)]; anxiety; and traumatic brain injury." AR at 28 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). The ALJ noted that Plaintiff has the following non-severe impairments: "left retinal detachment . . . , migraines, irritable bowel syndrome . . . , obstructive sleep apnea . . . , history of polysubstance abuse, [and] dysphasia/trouble swallowing related to GERD . . . ." AR at 28-29.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 29 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). At Step Four, the ALJ considered the evidence of record and found that Plaintiff

> has the [RFC] to lift up to twenty pounds occasionally and lift or carry up to ten pounds frequently. [He] can stand or walk for approximately six hours per eight-hour workday and sit for approximately six hours per eight-hour workday, taking normal breaks. [He] can push or pull as much as they can lift or carry. [He] can never climb ladders, ropes, or scaffolds, but may occasionally climb ramps and stairs, stoop, crouch, crawl, and kneel. [He] must avoid concentrated exposure to environmental irritants, such as fumes, odors, dusts, and gases. [He] can perform work limited to simple, routine, and repetitive reasoning level 2 tasks; performed in a work environment free of fast paced production requirements; involving only simple work related decisions; and with few if any workplace changes. There should be no interaction with the public, only occasional interaction with co-workers, involving no tandem tasks, and only occasional supervision.

AR at 31. ALJ Upshall found that Plaintiff "is unable to perform any past relevant work." AR at 38 (citing 20 C.F.R. §§ 404.1565, 416.965). Based on the testimony of the VE, the ALJ determined that Plaintiff can perform the jobs of silver wrapper, pacing splitter,

and photocopy machine operator. AR at 39. The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 1, 1993, through the date of [the ALJ's] decision." AR at 39 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

## III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would

justifiably have made a different choice had the matter been before it de novo.'" *Id.*

(quoting *Zoltanski*, 372 F.3d at 1200).

## IV. Discussion

Plaintiff argues that remand is warranted because: (1) the ALJ failed to properly consider the opinions of treating psychiatrist Edwin B. Hall, MD or treating counselor Bentley Oliver, LPCC, MS; and (2) the ALJ erred in failing to order a neuropsychological evaluation. *See Doc. 24* at 22-25. The Court finds that Plaintiff has not demonstrated reversible error.

### A. Plaintiff has not demonstrated any reversible error in the ALJ's analysis of Dr. Hall's opinion.

Plaintiff argues that ALJ Upshall did not adequately consider Dr. Hall's opinion. *Doc. 24* at 22-23. Dr. Hall, Plaintiff's treating psychiatrist, first saw Plaintiff in January 2013 and treated him regularly through September 2017. *See* AR at 616-49, 680-713, 752-92.

#### 1. The Treating Physician Rule[3]

"The ALJ should accord opinions of treating physicians controlling weight when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the 'treating physician rule.'" *Padilla v. Colvin*, No. CV 14-495 CG, 2015 WL 10383109, at *4 (D.N.M. June 29, 2015) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)). "A treating physician's opinion is accorded controlling weight because the treating physician has a

---

[3] The parties agree that as Plaintiff filed his claim before March 27, 2017, 20 C.F.R. §§ 404.1567 and 416.927 apply. *See Doc. 26* at 9 n.7.

'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.'" *Id.* (quoting *Doyal*, 331 F.3d at 762).

If an ALJ decides that a treating physician's opinion is entitled to less than controlling weight, the ALJ must follow two steps. *See id.* at *5. "First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record." *Id.* If the opinion is not well-supported by the medical evidence or if it is "inconsistent with other substantial evidence in the record[,]" the ALJ will not give the opinion controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying SSR 96-2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). At the second step of the analysis of a treating physician's opinion, the ALJ "must determine what deference he will accord the opinion after considering the six deference factors listed" in 20 C.F.R. § 416.927. *Padilla*, 2015 WL 10383109, at *4; *see also Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Padilla*, 2015 WL 10383109, at *4 (quoting *Watkins*, 350 F.3d at 1300). "When evaluating any medical opinion in the record, the ALJ must give good reasons—reasons that are 'sufficiently specific to make clear to any subsequent reviewers'—for the weight

that he ultimately assigns to" those opinions. *Id.* (quoting *Langley*, 373 F.3d at 1119).
The ALJ's "determination, like all of his findings, must be supported by substantial
evidence." *Id.*

### 2. The ALJ's evaluation of Dr. Hall's opinion

Dr. Hall submitted a "Medical Source Statement: Mental Limitations" in
September 2017. AR at 747-51. He opined that, of the mental abilities and aptitudes
needed to do unskilled work, Plaintiff was "seriously limited, but not precluded" in four[4]
areas: (1) understand and remember very short and simple instructions; (2) make
simple work-related decisions; (3) understand and remember detailed instructions; and
(4) adhere to basic standards of neatness and cleanliness. AR at 749-50. Of the
remaining 21 abilities, Dr. Hall found that Plaintiff was either "unable to meet competitive
standards" or had "no useful ability to function." AR at 749-50. Dr. Hall explained that
"the medical/clinical findings that support[ed his] assessment" include: "severe paranoia
[and] anxiety – guarded[;] some recurrent depression/intractable associated [with] a
mood disorder[;] severe PTSD – [with] trigger flashbacks[;] occasional breakthrough of
psychotic [symptoms] – delusions . . . ."[5] Dr. Hall further opined that Plaintiff "cannot
sustain focus or task persistence due to complex psychiatric conditions[;] PTSD, mood
disorder, [with] . . . suicidal plan/anxiety[,]" and that Plaintiff's impairments would cause

---

[4] In the first area, the ability to understand and remember very short and simple instructions, Dr.
Hall marked both "seriously limited, but not precluded," and "no useful ability to function." *See* AR
at 749. As he found that Plaintiff's ability to understand and remember detailed instructions was
also seriously limited, but not precluded, the Court presumes that Dr. Hall did not intend to mark
the more limited selection in the first area.

[5] Dr. Hall's handwriting is somewhat hard to read, but the Court is fairly confident that this
quotation is accurate.

him to be absent from work more than four days per month. AR at 751. Finally, Dr. Hall assessed that Plaintiff's highest Global Assessment of Functioning (GAF) rating in the last year was 25-30. AR at 747. ALJ Upshall rejected Dr. Hall's opinion. AR at 36.

At the first step of the treating physician analysis, the ALJ found that Dr. Hall's opinion was inconsistent with the mental status examinations from his own treatment records, with "his opinion that [Plaintiff] is capable of managing his own funds," and with higher GAF ratings that Dr. Hall had assessed during the previous year's treatment. *See* AR at 36. At the second step, in addition to the above considerations, the ALJ noted additional specific contradictions within Dr. Hall's opinion and treatment records. AR at 36. Plaintiff argues that the ALJ erred by focusing too much on the GAF rating and by "fail[ing] to meaningfully consider the relevant factors at the second step." *See Doc. 24* at 22. The Court finds that the ALJ's analysis was sufficient.

With respect to the first, second, and fifth factors, ALJ Upshall noted that the Plaintiff "testified that he has seen Edwin B. Hall, MD, for over ten years."[6] AR at 32. The ALJ also observed that Dr. Hall prescribed a variety of medications to treat Plaintiff's mental health conditions. *See* AR at 30, 33-35. Regarding the third and fourth factors, the ALJ found that Dr. Hall's opinion "allege[d] a far greater level of limitation than other objective medical evidence reveals, including limitations and abilities that his own treatment records do not reflect, detracting from its veracity . . . ." AR at 36. ALJ Upshall identified several inconsistencies.

---

[6] The ALJ also considered the state of Dr. Hall's medical license, which "was suspended and later surrendered." AR at 32 (citing AR at 359-65). As Dr. Hall completed the Medical Source Statement before he surrendered his medical license, the ALJ found it was appropriate to consider Dr. Hall's opinion. AR at 32, 36 (citing AR at 347-65, 369).

The ALJ compared the GAF rating that Dr. Hall opined in the Medical Source Statement (25-30) with GAF ratings Dr. Hall assessed in his treatment notes, the lowest of which was 55. AR at 36 (citing AR at 747, 755). In fact, only one day before Dr. Hall completed the Medical Source Statement, he saw Plaintiff and assessed a GAF rating of 55. *See* AR at 36 (citing AR at 754). The ALJ mused, "What changed overnight to result in such a limiting opinion? Nothing did." AR at 36. Plaintiff asserts that "the ALJ focuses on the discrepancy between the GAF scores instead of considering Dr. Hall[']s notes as a whole."[7] *See Doc. 24* at 22. Yet, the inconsistencies between Dr. Hall's treatment records and the GAF rating and limitations he opined in the Medical Source Statement provide a firm basis on which to discount his opinion. Indeed, a GAF score of 25-30 indicates that "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." *Keyes-Zachary*, 695 F.3d at 1162 n.1 (quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000)). Such a score seems inconsistent, as the ALJ points out, with Dr. Hall's treatment notes from the day prior that medical cannabis helps Plaintiff's feelings of rage, PTSD symptoms, and nightmares, and Xanax effectively manages his anxiety. AR at 36 (citing AR at 752). The ALJ also noted that a GAF rating of 25-30 is inconsistent with Dr. Hall's opinion that Plaintiff can manage his own funds. AR at 36.

---

[7] And as discussed below, the Court disagrees that the ALJ failed to consider Dr. Hall's treatment notes, as he referred to them throughout his decision. *See* AR at 30-36 (citing AR at 616-49, 680-713, 752-92).

A score of 55, on the other hand, indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Keyes-Zachary*, 695 F.3d at 1162 n.1 (quotation omitted). As the ALJ detailed at Step Three, Plaintiff's impairments result in no more than moderate mental limitations, which are more in line with the more consistently opined GAF rating of 55. *See* AR at 29-30; *see also* AR at 683, 689, 695, 700, 755, 760, (Hall 2015-2017 treatment records noting GAF rating of 55). Additionally, ALJ Upshall noted that aside from "abnormal findings with mood, affect, and thought content" on September 11, 2017, attributed to Plaintiff's self-reporting, Dr. Hall's mental status examination "was otherwise within normal limits . . . ." AR at 36 (citing AR at 753). The ALJ also mentions that "Dr. Hall's mental status evaluations are usually difficult to interpret since contradictory items are checked." AR at 36 (citing AR at 134).

Critically, Plaintiff does not disagree with the multiple noted inconsistencies. *See Docs. 24*; *29*. Instead, he argues that the ALJ failed to consider that Dr. Hall observed Plaintiff's suicidal ideations, homicidal ideations, hallucinations, paranoia, tangential thinking, obsessions and compulsions, ruminations and perseverations, pressured and/or rapid speech, labile mood, depressed/anxious/irritable affect, inability to take SSRIs, ineffectiveness of lorazepam, and mood. *Doc. 24* at 22-23. As the Commissioner points out, however, "the ALJ did not ignore these symptoms—to the contrary, he explicitly discussed that Plaintiff had suicidal ideation but no intent to act on it (AR at 31), mood regulation issues (AR at 32, 36), depression (AR at 33, 35), anxiety

(AR at 30, 32, 34, 36), paranoia (AR at 30, 32), and obsessions (AR at 30)." *Doc. 26* at 14.

Finally, with respect to the sixth factor ("other factors"), the ALJ observed inconsistencies in Dr. Hall's treatment records regarding Plaintiff's medications. Specifically, the ALJ remarked that Dr. Hall recorded Plaintiff's allergic reaction to buproprion hcl, "yet he continues the prescription for it, as [Plaintiff] reported that it helped manage his depression, and Dr. Hall noted that [Plaintiff] did not report any side-effects . . . ." AR at 35 (citing AR at 764-66). Plaintiff also complains that "the ALJ unreasonably infers that [he] had no 'active medications' when Dr. Hall" rendered his opinion. *Doc. 24* at 23. As the Commissioner responds, however, this was not an inference, but a direct reference to Dr. Hall's contemporaneous treatment note, "which stated that Plaintiff had 'no medications currently active.'" *Doc. 26* at 13 (citing AR at 36, 752). "If Plaintiff actually did have active prescriptions as of September, 2017, as [he] seems to be arguing, then Dr. Hall's notation of 'no medications currently active' is yet another internal inconsistency in his treatment notes." *Id.*

While Plaintiff quibbles with the ALJ's "passing reference" to the record evidence (*see Doc. 29* at 7) and asserts that the ALJ did not consider substantial evidence that supports Dr. Hall's records (*Doc. 24* at 23), the Court finds that ALJ Upshall's opinion was both thoughtful and thorough. The ALJ was justified in discounting Dr. Hall's opinion due to the multiple inconsistencies between his opinion and the record evidence, including his own treatment records. *See White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001) (affirming decision where ALJ discounted provider's opinion due in part to "the discrepancy between [the provider's] very restrictive functional assessment

and her contemporaneous examination of" the claimant). The Court finds that

substantial evidence supports the ALJ's rejection of Dr. Hall's opinion. *See Rush v. Hall*,

389 F. Supp. 3d 957, 972 (D.N.M. 2019) (noting "the deferential substantial-evidence

standard the Court must apply when reviewing an ALJ's decision" to give limited weight

to treating psychiatrist's opinion where there were internal inconsistencies).

**B.      Plaintiff has not demonstrated any reversible error in the ALJ's analysis of Bentley Oliver's opinion.**

The ALJ expressly rejected the opinion of Bentley Oliver, LPCC, MS, "as she is

not an acceptable medical source under the Regulations, and there are no

accompanying records to provide a foundation for such an opinion." AR at 37.[8] Indeed,

Plaintiff acknowledges that this treating therapist is not an "acceptable medical source

under then existing regulations. . . ." *See id.* Nevertheless, Plaintiff contends that ALJ

Upshall did not adequately evaluate Ms. Oliver's opinion. *Doc. 24* at 24.

Bentley Oliver submitted a "Medical Source Statement: Mental Limitations" on

August 18, 2018. AR at 822-26. Ms. Oliver stated that she had treated Plaintiff one time

per week for approximately six months, since February 24, 2018. AR at 822. She

opined that of the mental abilities and aptitudes needed to do semiskilled and skilled

work, Plaintiff's abilities would be "unlimited or very good" in two areas (neatness/

cleanliness and being aware of normal hazards); "limited but satisfactory" in six areas

(understand/remember detailed instructions; carry out detailed instructions; travel in

unfamiliar places; remember work-like procedures; understand/remember short/simple

---

[8] Although both Plaintiff and Defendant refer to Bentley Oliver as "Mr." Oliver, it appears that  ALJ Upshall correctly referred to her as "Ms." Oliver, and I will do the same here. *See Designed Health Options, LLC*, https://designedhealthoptions.com/ (last visited 06/03/2021).

instructions; carry out short/simple instructions); seriously limited but not precluded in two areas (use public transportation; make simple work-related decisions); and "unable to meet competitive standards" or "no useful ability to function" in the remaining 15 areas. AR at 823, 825.

The Court agrees that the ALJ gave short shrift to Ms. Oliver's opinion, as the factors an ALJ uses to weigh medical opinions rendered by acceptable medical sources also apply to providers who are not acceptable medical sources. *See Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). The ALJ only explicitly considered the third and fifth factors: the degree to which the opinion was supported by relevant evidence and whether the provider was a specialist. ALJ Upshall noted that Ms. Oliver is a Licensed Professional Clinical Counselor with a Master of Science degree, and he found that because Plaintiff failed to submit any treatment records from Ms. Oliver, there was no foundation for the opinion. *See* AR at 37. The ALJ also implicitly considered at least the first two factors, as he evaluated the entire opinion, in which Ms. Oliver stated that she saw Plaintiff for counseling once per week since February 24, 2018, just under six months prior to rendering her opinion. *See* AR at 822; *see also* AR at 31-32 (noting that she "considered the opinion evidence in accordance with the requirements of 20 [C.F.R. §§] 404.1527 and 416.927").

Plaintiff argues that the ALJ's analysis of Ms. Oliver's opinion was deficient, however, because he failed to consider that Ms. Oliver's opinion was "fundamentally consistent with" Dr. Hall's opinion. *Id.* This makes little difference, however, as the Court finds that the ALJ properly discounted Dr. Hall's opinion. The Commissioner also points

out several inconsistencies between Ms. Oliver's opinion and Dr. Hall's records. *See Doc. 26* at 16.

Plaintiff asserts that Ms. Oliver's opinion is consistent with "the overall record including Dr. Hall's records, the Presbyterian records, and the Southwest Cares records." *Id.* Plaintiff does not elaborate on *how* Ms. Oliver's opinion is consistent with these records in his motion (*see Doc. 24* at 24), but he states in his reply brief that "treatment notes from other providers reflect significantly abnormal mental status examinations and observations" (*Doc. 29* at 8). Yet, ALJ Upshall cited to records from Dr. Hall, Southwest Cares, and Presbyterian Health throughout his decision, including to records detailing Plaintiff's mental status at these visits. For example, he noted Dr. Hall's observations that Plaintiff: has an "intact memory" and an "excellent fund of knowledge" (AR at 30 (citing AR at 752-92)); obsessively learns about certain topics (AR at 30 (citing AR at 828)); may be depressed for months and then explodes with anger (AR at 30 (citing AR at 752-92)); "has a short and nasty temper, gets irritated easily, yelling at the computer or traffic" (AR at 30 (citing AR at 837)); suffers from anxiety and PTSD symptoms (AR at 30 (citing AR at 752-92)); self-isolates (AR at 30 (citing AR at 827-39)); "was observed to have good attention, recent memory, remote memory, judgment and insight, an adequate fund of knowledge, normal association, and some abnormal/psychotic thoughts paranoia" along with nightmares (AR at 30 (citing AR at 835-39)); "reports that the walls are breathing" (AR at 30, 832); references suicidal ideations (AR at 30 (citing AR at 752-92) & AR at 31 (citing AR at 828) & AR at 34 (citing AR at 828)); has "crippling anxiety" and "seldom leaves the house due to

agoraphobia" (AR at 34, 787). It is clear to the Court that the ALJ considered the evidence Plaintiff refers to in this argument.

In short, while ALJ Upshall's analysis of Ms. Oliver's opinion is uncomfortably succinct, the Court does not find any reversible error.

**C.    Plaintiff fails to establish that the ALJ committed reversible error when he chose not to order a neuropsychological consultation.**

Finally, Plaintiff asserts that the ALJ erred when he did not order a supplemental neuropsychological consultation. *Doc. 24* at 24. Following is a summary of the record regarding the subject evaluation.

Prior to the initial denial of Plaintiff's claims, DDS ordered a consultative examination with Mary S. Loescher, PhD, because the record evidence was "not sufficient to support a decision on the claim." *See* AR at 99; *see also* AR at 718-22. Plaintiff attended a one-time examination with Dr. Loescher on September 20, 2016. *See* AR at 718. At this exam, Plaintiff reported that he had completed neuropsychological testing three or four weeks prior to his visit with Dr. Loescher. AR at 718. As a result, Dr. Loescher did not perform "standardized testing" as part of her exam.[9] AR at 718.

At the administrative hearing, the ALJ asked Plaintiff's attorney, Benjamin Decker, about the neuropsychological evaluation record. *See* AR at 56. Mr. Decker did not have the record at the hearing, and the ALJ directed him to obtain them. AR at 56-57. ALJ Upshall reiterated at the end of the hearing:

> I want to see the neuropsych evaluation, and I'll wait to get that. Once I get that, there's a couple of possibilities. If I feel I need to have you evaluated

---

[9] Dr. Loescher noted, though, that she gave Plaintiff "the Digit Symbol subtest of the WAIS-IV . . . ." AR at 720.

by anybody, I'll take steps to do that. If I don't think I need that, and think I have everything I need, I will then issue a written decision . . . .

AR at 82. Mr. Decker sent a letter to ALJ Upshall in September 2018, two weeks after the administrative hearing, and asked him to hold the record open while he tried to secure the neuropsychological evaluation record. AR at 344. In January 2019, the ALJ responded and stated that he would "keep the record open until February 1, 2019 with no additional extensions." AR at 346. He cautioned Mr. Decker that if he did "not receive the additional evidence by that date, [he would] close the record and issue a decision without it." AR at 346. As he did not receive the report, the ALJ did just that. *See* AR at 26 ("I held the record open, with multiple extensions until February 1, 2019 to allow [Plaintiff's] representative to submit the evaluation, however it was never obtained and submitted.")

Plaintiff now claims that the ALJ erred in failing to order an additional examination. *See Doc. 24* at 24-25. The Commissioner disagrees and asserts that "the record before the ALJ was sufficient for [him] to evaluate Plaintiff's mental conditions." *Doc. 26* at 18. Plaintiff disagrees and argues that because the Agency ordered a consultative examination that was not fully performed, the record was incomplete and the ALJ had a duty to order a second examination. *See Doc. 29* at 8-11.

Where the record evidence is inconsistent or insufficient to allow the agency "to make a determination or decision on [a] claim[,]" the agency may "purchase a consultative examination." 20 C.F.R. § 404.1519a(a), (b). Again, DDS ordered a consultative examination because at the time, the record evidence was "not sufficient to support a decision on the claim." *See* AR at 99. Dr. Loescher performed the

examination without completing certain standardized testing, as Plaintiff reported that he had already undergone neuropsychological testing. *See* AR at 718. Dr. Loescher did not specify what testing she would have performed, but she did observe that Plaintiff "was very familiar with the test items and reported that he had recently taken WAIS-IV . . . ." AR at 718.

Plaintiff argues that because Dr. Loescher "obviously felt that neuropsychological testing was necessary to perform a complete evaluation[,] . . . the ALJ should have ordered a supplemental consultative examination so that Plaintiff could undergo neuropsychological testing." *Doc. 24* at 25. Yet, that is not the standard. It is the Agency, not the consultative examiner, who decides whether an examination is necessary. "The ALJ's duty to develop the record may require ordering a consultative examination, but the ALJ 'has broad latitude' in determining whether to do so." *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997)). "[T]here is no need for a consultative examination when the ALJ has enough information to make a disability determination." *Id.* (citing *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008)).

Here, while Dr. Loescher did not perform some unspecified testing, she did review medical records and conduct a mental status examination, which allowed her to offer a "Summary and Impressions" and a "Diagnostic Impression."[10] *See* AR at 718-22. The ALJ gave explicit notice to Plaintiff's attorney that he would hold the record open until a date certain, and if Plaintiff failed to submit the neuropsychological evaluation,

---

[10] Dr. Loescher did indicate that her impressions "could be revised" if she obtained "additional information" later. AR at 721.

the ALJ would render a decision without it. AR at 346. As ALJ Upshall issued his decision without the neuropsychological examination, he clearly believed the evidence was sufficient to allow for a decision. *See* 20 C.F.R. § 404.1519a(b).

The Tenth Circuit has found that "if the claimant's attorney does not request a consultative examination, the ALJ has no duty to order one unless the need 'is clearly established in the record.'" *Jazvin*, 659 F.App'x at 489 (quoting *Hawkins*, 113 F.3d at 1168). The Commissioner points out that here, Plaintiff's attorney "never requested a second consultation or neuropsychological evaluation" when it became clear that the original record was unavailable. *Doc. 26* at 20. Plaintiff does not identify how the record is "clearly established" that neuropsychological testing was needed to develop any issue. *See Jazvin*, 659 F. App'x at 489. Nor does he argue that there was inconsistent or insufficient evidence regarding his mental limitations. *See Docs. 24*; *29*. Rather, he argues that Dr. Loescher's examination was "incomplete" and thus triggered the ALJ's duty to order a supplemental examination, and that the Commissioner's argument to the contrary "is a red herring." *Doc. 24* at 10 (citing *Hawkins*, 113 F.3d at 1164; *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993)). Again, though, Dr. Loescher shared diagnostic findings that resulted from her review and examination.

The Court finds guidance in the case of *Rooks v. Berryhill*, No. CV 17-929 CG, 2018 WL 3993446, (D.N.M. Aug. 21, 2018). There, the court found that the ALJ committed reversible error in failing to order a consultative examination where "both the initial and reconsideration level physicians stated that there was insufficient evidence to determine whether [the claimant] was disabled" *and* where the ALJ did not discuss any evidence that post-dated those opinions. *Id.* at *4-5. Here, however, the initial and

reconsideration level physicians did not say that there was insufficient record evidence, but rather that an RFC assessment was necessary. *See* AR at 116, 135. Further, the ALJ explicitly considered treatment records and other evidence that post-dated the initial and reconsideration physicians' statements that an RFC assessment was necessary. *See, e.g.*, AR at 30 (citing AR at 827-39), AR 30-31 (citing AR at 793-815), AR at 35 (citing 820), AR at 36 (citing AR at 818).

From the record evidence, ALJ Upshall determined that although Plaintiff has mental impairments, he finds relief for anxiety and PTSD symptoms with medical marijuana, has an intact mental status, can ask for help when he needs it, and maintains considerable activities of daily living (i.e., can drive, shop, prepare meals, care for plants, play cards with others, learn about hobbies). The ALJ described Plaintiff's symptoms, his many attempts to find medications to control those symptoms and their side effects, and his other efforts to treat his impairments. ALJ Upshall's reasoning for assigning the RFC was thoroughly summarized:

> As [Plaintiff] is able to play cards with friends, I find him capable of working with no public contact and only occasional interactions with co-workers, involving no tandem tasks, and occasional supervision. Mentally, [Plaintiff] appears able to research, read, and apply information when he is interested in doing so, therefore I find him capable of performing simple, routine, and repetitive reasoning level two tasks, involving only simple work related decisions, with few if any workplace changes. Due to reports of low frustration tolerance and rage, I have limited [him] to work that does not involve fast-paced production requirements.

AR at 37.

In short, the Court finds that the ALJ had sufficient information to make a disability determination and declines to remand on this basis. *See Jazvin*, 659 F.App'x

at 489 (finding that where "the ALJ had enough information to make a disability determination[,]" remand was not warranted) (citing *Cowan*, 552 F.3d at 1187).

## V. Conclusion

Plaintiff has failed to show that the ALJ erred in evaluating the provider opinions or in declining to order a supplemental consultation. Accordingly, the Court will deny Plaintiff's motion to remand.

 Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse or Remand (*Doc. 24*) is **DENIED**. A final order pursuant to Rule 58 of the Federal Rules of Civil Procedure will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent